In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00123-CR


______________________________




NATASHA KAY HOLLIS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 17,171-2002




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Natasha Kay Hollis has appealed from the revocation of her community supervision for the
underlying offense of intoxication assault. See Tex. Penal Code Ann. § 49.07 (Vernon 2003). The
trial court sentenced Hollis to two years' confinement. She was also to pay $49,180.12 in restitution. 
Hollis was represented by retained counsel at trial and by different, appointed, counsel on appeal. 

 Appellate counsel filed a brief January 2, 2007, under the mandate of Anders v. California,
386 U.S. 738 (1967), and Ex parte Senna, 606 S.W.2d 329, 330 (Tex. Crim. App. 1980), and has
accordingly also filed a motion to withdraw. Counsel sent Hollis a copy of the brief and advised her
by letter that he believes there are no arguable contentions of error. He also informed Hollis of her
right to review the record and file a pro se response. No response has been filed, and Hollis has not
sought additional time in which to prepare a response. 

 Counsel has filed a brief which discusses the record and reviews the proceedings. Counsel
has thus provided a professional evaluation of the record demonstrating why, in effect, there are no
arguable grounds to be advanced, as required by High v. State, 573 S.W.2d 807, 812 (Tex. Crim.
App. [Panel Op.] 1978). See also Stafford v. State, 813 S.W.2d 503, 510 n.3 (Tex. Crim. App.
1991). Counsel concluded from his review of the record that there is no arguable point of error to
support the appeal. 

 Counsel further states in the brief that the "plea, conviction and sentencing were done
according to statutory and case law" and that a plea of "true" was entered to the allegations of Hollis'
violation of the terms and conditions of her community supervision.

 In his review of the record, counsel did find and had corrected an error in the judgment that
included a finding of "Yes-deadly weapon used or exhibited." A judgment nunc pro tunc was
entered December 8, 2006, changing this wording to "Not Applicable." Thus, this error has been
corrected. 

 However, in our review of the record, we note that the judgment nunc pro tunc incorrectly
reflects that this is an adjudication of guilt. In correcting the error referenced in the previous
paragraph, another error was made in the trial court's judgment. 

 This Court has the authority to reform the judgment to make the record speak the truth when
the matter has been called to our attention by any source. French v. State, 830 S.W.2d 607 (Tex.
Crim. App. 1992). In Asberry v. State, 813 S.W.2d 526 (Tex. App.--Dallas 1991, pet. ref'd), the
court noted that the authority of the appellate court to reform incorrect judgments is not dependent
on the request of any party; the appellate court may act sua sponte. The Texas Rules of Appellate
Procedure provide direct authority for this Court to modify the judgment of the trial court. Tex. R.
App. P. 43.2.

 Therefore, we reform the trial court's judgment to reflect a judgment of revocation of
community supervision, rather than an adjudication of guilt.

 We have reviewed the record and agree with counsel that there are no arguable points of error
in this case. (1)

 As reformed, we affirm the judgment of the trial court.


 Jack Carter

 Justice


Date Submitted: March 6, 2007

Date Decided: March 7, 2007


Do Not Publish

 
1. Since we agree this case presents no reversible error, we also, in accordance with Anders,
grant counsel's request to withdraw from further representation of Hollis in this case. No substitute
counsel will be appointed. Should Hollis wish to seek further review of this case by the Texas Court
of Criminal Appeals, she must either retain an attorney to file a petition for discretionary review or
she must file a pro se petition for discretionary review. Any petition for discretionary review must
be filed within thirty days from the date of either this opinion or the last timely motion for rehearing
that was overruled by this Court. See Tex. R. App. P. 68.2. Any petition for discretionary review
must be filed with this Court, after which it will be forwarded to the Texas Court of Criminal
Appeals along with the rest of the filings in this case. See Tex. R. App. P. 68.3. Any petition for
discretionary review should comply with the requirements of Rule 68.4 of the Texas Rules of
Appellate Procedure. See Tex. R. App. P. 68.4.



 589, 595 (Tex. Crim. App. 2003); Johnson, 23 S.W.3d at 11; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Harris v. State, 133 S.W.3d 760, 764 (Tex.
App.--Texarkana 2004, pet. ref'd). A clearly wrong and unjust verdict is manifestly unjust, shocks
the conscience or clearly demonstrates bias. Sells v. State, 121 S.W.3d 748, 754 (Tex. Crim. App.
2003); Santellan v. State, 939 S.W.2d 155,164 (Tex. Crim. App. 1997). 

 We measure the evidence "by the elements of the offense as defined by the hypothetically-correct jury charge for the case." (1) Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see
also Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The hypothetically-correct jury
charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's
burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the
particular offense for which the defendant was tried." Malik, 953 S.W.2d at 240. It is used to
evaluate both legal and factual sufficiency. Grotti, 273 S.W.3d at 281. 

 To promote economic development, the United States Department of Agriculture (USDA)
provides loans to low-income families to assist them in purchasing or building houses in rural areas. 
Holz applied for such a loan to purchase a residence in Marion County at a cost of $35,000.00. In
April 2005, she contracted to purchase the residence in question with Joe B. Jones, an agent and area
specialist for the USDA. The contract was contingent on USDA's approval of the credit sale. Holz's
$100.00 earnest money check bounced for lack of sufficient funds. This prompted USDA's requests
to Holz to re-verify her income. Holz never complied. As a consequence, the loan was never
approved and the property sale was never closed. After the contract for sale was cancelled, Holz
picked up the title company's file containing documentation to that effect. The cancellation of the
sales contract did not stop Holz. She moved into the residence and lived there at no cost for over
three years, collecting and housing dogs. 

 Fourteen of Holz's Australian shepherds and blue heeler dogs moved into the new residence
with her. Because Holz loved animals, she took in a large number of strays and "boxes of puppies"
people abandoned close to the house. Neighbor Don Adams began to notice "more and more dogs
and more and more litter on the yard." Adams, who lived a block and a half away from Holz, found
dog carcasses on his property and throughout the neighborhood. He recounted that "a lot of the
puppies that were running free were run over by cars." Adams testified that the smell emanating
from the property was like that of a meat packing plant and affected the whole neighborhood. After
some time, he contacted Caroline Wedding of the Marion County Humane Society. 

 Wedding observed approximately forty-five dogs outside the house on the property occupied
by Holz, some of these dogs contained in pens Holz had built with 560 feet of chain link fence. Holz
claimed that, inside the house, there were eight dogs that should be euthanized, but denied entry to
Wedding, who reported her observations to the sheriff's department. Shortly thereafter, Society for
the Prevention of Cruelty to Animals investigator Christopher West met with Holz and was also
denied access into the house. This time, Holz claimed there were only four dogs inside. A warrant
authorizing seizure of the dogs was obtained. 

 The following day, hoping to avoid confrontation during seizure of the animals, Investigator
Shawn Cox, accompanied by West and Wedding, executed an outstanding, unrelated warrant for
Holz's arrest. The seizure of the dogs was recorded on video and later played back for the jury. 
West's testimony punctuated the video, depicting the utterly deplorable condition of the house caused
by animals living in vile conditions. West carried an ammonia warning meter that determined
whether dangerous levels of ammonia given off by urine existed in the environment. He clarified
that any reading above twelve parts per million is hazardous to human health, that a person can work
only eight hours in an environment with an ammonia level above twenty-five parts per million, and
that if the meter reads fifty parts per million, no more than five minutes should be spent in the
environment. The video and testimony demonstrated that West's ammonia meter read sixteen parts
per million while located on the front porch before West's entry into the house. The meter jumped
to ninety-nine when the front door was opened. "We had max'd our meter out. It does not go any
higher than that." West recounted:

On my initial entry into the home I lasted about fifteen to twenty seconds before I had
to leave due to the ammonia smell and fecal smell inside the home. There were
about 30 dogs, 30 to 32 dogs running loose, nipping at my heels, free roaming inside
the home. There was compressed feces basically from wall to wall. I could not see
the floor, it was all feces. In all of the rooms I did not see any furniture with the
exception of a TV set that I remember in the home and the dogs were just free
roaming. The smell was incredible. The dogs were running back and forth, hard to
get my footing because of all the feces.


West noticed a lot of damage to the walls and floor, and a hole beneath the slab that "[m]ultiple dogs
were climbing into." Thirty-five to thirty-nine dogs were recovered from inside the house. The
video shown to the jury confirmed the horrific conditions and profound damage to the house.

 Despite her prior background managing residential real estate sales, and knowledge that
"[w]e had to show up at the closing," Holz testified that she believed she owned the property
because her real estate agent gave her the key. To this effect, Holz testified that she made repairs
to the house as if it were hers, put her name on the mailbox, received mail, and had telephone and
water service. Thus, she argues, she believed the damage being done to the house was damage to
her own property. 

 Meanwhile, Jones was not aware that anyone was occupying the property. He testified that,
after discovery of the situation at the house, he was required to go to an "environmental type
specialty firm" to receive cleanup estimates due to the hazardous environment. The trial court
sustained Holz's hearsay objection to the estimates, and they were never admitted. Based on Jones'
experience in estimating the value of property, however, he considered the property to be a total loss
and would probably condemn it and haul it off. 

 Attorney Chase Palmer testified that, on an earlier occasion, Holz had left his client's rental
property in a deplorable condition by allowing dogs to live there. He described the "terrible smell
emanating from the house" and told the jury that the earlier house was eventually bulldozed. 

 A person commits criminal mischief if he or she, without the effective consent of the owner,
intentionally or knowingly damages or destroys the tangible property of the owner. Tex. Penal
Code Ann. § 28.03 (Vernon Supp. 2008). Also, since the value of pecuniary loss determines the
grade of the offense, it is a crucial additional element of criminal mischief. Tex. Penal Code Ann.
§ 28.03(b); see Lackey v. State, No. 06-08-00162-CR, 2009 WL 1884421, at *5, 8 (Tex.
App.--Texarkana July 2, 2009, pet. filed) (citing Elomary v. State, 796 S.W.2d 191, 192-93 (Tex.
Crim. App. 1990); Barnes v. State, 248 S.W.3d 217, 220 (Tex. App.--Houston [1st Dist.] 2007, pet.
struck)). 

 Holz contends that because she operated under the belief that the property was hers, she did
not intend to damage or destroy another's property. (2) Holz's belief as to ownership of property does
not affect the analysis of the mens rea element. A person acts intentionally "when it is his conscious
objective or desire to engage in the conduct that caused the result." Tex. Penal Code Ann.
§ 6.03(a) (Vernon 2003). A person acts knowingly "with respect to a result of his conduct when he
is aware that his conduct is reasonably certain to cause the result." Tex. Penal Code Ann. § 6.03(b)
(Vernon 2003). The conduct at issue is Holz's housing of the dogs within the house where they
defecated, urinated, created holes in the wall, and otherwise destroyed the house. The result of Holz's
conduct was damage or destruction of the property. She testified on direct examination that she
realized the dogs were doing some damage to the carpeting and floors. A review of the evidence
demonstrates it was legally and factually sufficient for a jury to at least find Holz was reasonably
certain that housing over thirty dogs inside the house, and allowing them to roam free, defecate, 
urinate, and create holes in the walls, would cause damage or destruction of the property.

(2) Legally and Factually Sufficient Evidence Supports the Jury's Finding of the Owner of the
Property


 Holz complains that the evidence was insufficient to demonstrate "Joe B. Jones, agent for
the U.S.D.A. Rural Development" was the owner of the property because title was in the name of
the United States of America. She also contends Rural Development is "a collection of programs"
that cannot be an owner as a matter of law. 

 An owner, as defined in the Texas Penal Code, is a person who "has title to the property,
possession of the property, whether lawful or not, or a greater right to possession of the property than
the actor." Tex. Penal Code Ann. § 1.07(35)(A) (Vernon Supp. 2008). Ownership may be alleged
through the actual owner or a special owner. Tex. Code Crim. Proc. Ann. art 21.08 (Vernon 2009). 
A special owner is an individual in custody or control of property belonging to another person. 
Harrell v. State, 852 S.W.2d 521, 523 (Tex. Crim. App. 1993). When a government entity is the
owner of property subject to criminal mischief, it is the preferable practice to allege special
ownership in a natural person acting for the entity. Id.; State v. Bartee, 894 S.W.2d 34, 44 (Tex.
App.--San Antonio 1994, no pet.) (citing Sowders v. State, 693 S.W.2d 448, 451 (Tex. Crim. App.
1985)). 

 In this case, the indictment alleges that Jones was the owner of the property. The deed
offered by Holz's counsel at trial names him as the substitute trustee for the property which was
"struck off to United States of America, Rural Housing Service." The deed lists Jones' office address
as the address of the owner. A tax receipt demonstrates taxes were paid by owners the United States
of America/Rural Housing Services, and also listed Jones' work address as the address for the
property owner. The sales contract signed by Holz was executed by "The United States of America,
acting through the Rural Housing Service," and was signed by Jones as the "Rural Development
Specialist" for USDA. Additionally, Jones testified that as agent for USDA, he is authorized to
execute documents relating to the residence on behalf of the United States of America. 

 On the other hand, the jury heard that Holz never closed on the purchase of the house,
bounced the escrow check, did not have a deed to the property, never made a payment on the house,
did not pay property taxes or insurance, and did not inform Jones she was living in the house. Holz's
testimony regarding her belief in ownership merely raised an issue of ownership for the jury to
resolve. We find this evidence was both legally and factually sufficient to enable the jury to find that
Jones had title as a representative and had a greater right to possession of the property than Holz. (3) 

(3) Legally and Factually Sufficient Evidence Supports the Jury's Finding that Holz Caused
Damage or Destruction of Property with a Pecuniary Loss of More than $20,000.00

 Next, we address Holz's point of error questioning whether the evidence was sufficient to
establish "damages." (4) The pecuniary loss resulting from the criminal mischief determines the grade
of the offense. Tex. Penal Code Ann. § 28.03(b); see Lackey, 2009 WL 1884421, at *8. Thus,
criminal mischief also includes, as a crucial element, the value of pecuniary loss. Id. at *5 (citing
Elomary, 796 S.W.2d at 192-93; Barnes, 248 S.W.3d at 220). If property is damaged, pecuniary
loss is determined by the cost of repairing or restoring the damaged property within a reasonable
time. Tex. Penal Code Ann. § 28.06(b) (Vernon 2003). If property is destroyed, the amount of
pecuniary loss is either the fair market value of the property at the time and place of destruction, or,
if fair market value cannot be ascertained, the cost of replacing the property within a reasonable time
after destruction. Tex. Penal Code Ann. § 28.06(a) (Vernon 2003). A pecuniary loss of more than
$20,000.00 but less than $100,000.00 supports conviction of the offense as a third-degree state jail
felony. Tex. Penal Code Ann. § 28.03(b)(5).

 Holz contends that there is no competent evidence to demonstrate the property was destroyed. 
We disagree. Because the term "destroy" is not statutorily defined in the Texas Penal Code, the
term's meaning is determined by its common usage. Tex. Gov't Code Ann. § 311.011 (Vernon
2005); Cullen v. State, 832 S.W.2d 788, 796-97 (Tex. App.--Austin 1992, pet. ref'd). "Destruction"
means "1. The act of destroying or demolishing; the ruining of something. 2. Harm that substantially
detracts from the value of property." Black's Law Dictionary 513 (9th ed. 2009). The term
"destroy" can refer to total or partial destruction. Cullen, 832 S.W.2d at 796-97. (5) Jones testified that
the property was an environmental hazard which he considered a total loss. He stated that he would
probably condemn it and haul it off. The jury heard that another house Holz left in a deplorable
condition also had been bulldozed as a result. When reviewing the evidence in a light most
favorable to the verdict, we conclude the jury had legally sufficient evidence to determine the
residence was ruined, or that the harm done to the house substantially detracted from its value.

 Holz claimed that the house was merely damaged, that it was structurally sound, and that she
could clean it up. The house was a concrete slab house, and her plan was to clean the feces from the
floor and sand it. She testified the repair work would cost less than $500.00. Even when viewing
this evidence in a neutral light, we cannot conclude that a finding of destruction was so obviously
weak as to undermine confidence in the verdict, or, if taken alone, was greatly outweighed by
contrary proof so as to be clearly wrong and unjust. (6) 

 We next address whether the evidence was sufficient to establish pecuniary loss in an amount
greater than $20,000.00. "[W]hen the State seeks to establish the value of an item of property
through the testimony of a non-owner[,] the witness must first be qualified as having personal
knowledge of the value of the property." Sullivan v. State, 701 S.W.2d 905, 908 (Tex. Crim. App.
1986). Yet, "[i]t has long been the rule in this State that the owner of property is competent to
testify" as to the fair market value of his own property. Id. Because such testimony is an offer of
the owner's best knowledge of the value of his property, it "constitutes legally sufficient evidence
for a trier of fact to make a determination as to the value based on the witness's credibility." Jones
v. State, 814 S.W.2d 801, 803 (Tex. App.--Houston [14th Dist.] 1991, no pet.) (citing Sullivan, 701
S.W.2d at 909).

 Fair market value is the amount of money that the property would sell for given a reasonable
time for selling it. Keeton v. State, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991). Jones stated the
sales price of the house, at least the amount Holz was previously willing to pay for the house, was
$35,100.00. A Marion County tax receipt outlining all of the taxes paid on the property in November
2007 valued the house at $48,250.00. (7) By law, all Texas taxing authorities are required to appraise
all taxable property at fair market value. Tex. Tax Code Ann. § 23.01 (Vernon 2008). We find the
evidence was sufficient for the jury to conclude that Jones suffered over $20,000.00 in pecuniary
loss. Further, in order to challenge the fair market value presented by Jones, Holz was required to
offer controverting evidence of the value of the property, not her own estimates of damage repair. 
Id. She did not present any evidence contradicting the fair market value as established by Jones'
testimony and the Marion County taxing authority. Thus, we find the evidence was legally and
factually sufficient for the jury to determine the amount of pecuniary loss exceeded $20,000.00. This
point of error is overruled.

(4) The Trial Court Did Not Err in Overruling Holz's Motion to Quash the Indictment

 Holz also argues on appeal that the trial court should have quashed the indictment because
the manner and means of committing the alleged offense was not set out in sufficient detail. We
review de novo a trial court's denial of a motion to quash. Lawrence v. State, 240 S.W.3d 912, 915
(Tex. Crim. App. 2007), cert. denied, __U.S.__, 128 S.Ct. 2056 (2008). The indictment in this case
alleged

that Barbara Holz, on or about the 10th day of July, 2008, . . . did then and there
intentionally or knowingly damage or destroy tangible property, to wit: a house by
allowing  numerous  dogs  to  remain  in  said  house,  without  the  effective  consent
of Joe B. Jones, agent for the U.S.D.A. Rural Development, the owner of said
property, causing pecuniary loss of $20,000 or more but less than $100,000 to said
owner.


Holz's motion to quash complained the indictment "fails to specify by what manner or means
Defendant did damage or destroy tangible property of the complainant and therefore fails to give
defendant sufficient notice, or precise notice of the manner and means she did damage or destroy"
the property. 

One statutory manner of committing the offense of criminal mischief is by intentionally or
knowingly damaging or destroying tangible property of the owner. Tex Penal Code Ann.
§ 28.03(a)(1). This is the gravamen of the offense, which was properly alleged. A charging
instrument which tracks the language of a criminal statute possesses sufficient specificity to provide
a defendant with notice of a charged offense in most circumstances. State v. Edmond, 933 S.W.2d
120, 128 (Tex. Crim. App. 1996) (citing Bynum v. State, 767 S.W.2d 769, 778 (Tex. Crim. App.
1989); DeVaughn v. State, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988)). The indictment must state
facts which, if proved, show a violation of the law; the indictment must be dismissed if such facts
would not constitute a criminal offense. Posey v. State, 545 S.W.2d 162, 163 (Tex. Crim. App.
1977).

Here, the indictment alleges facts--that Holz intentionally or knowingly damaged or
destroyed tangible property of the owner--constituting a particular statutory manner or means of
committing the offense of criminal mischief. "[W]hen a statute defines the manner or means of
committing an offense, an indictment based upon that statute need not allege anything beyond that
definition." Edmond, 933 S.W.2d at 130. 

In this instance, the indictment went further than the mere statutory language and alleged the
damage or destruction occurred when Holz allowed dogs to remain in the house. That further
description does not invalidate the previous allegation of a specific statutory manner or means of
committing the offense or make the indictment more vague or indefinite. The indictment gave Holz
ample notice of the manner and means of accomplishing the offense of criminal mischief.

Holz's motion to quash also claimed the indictment failed "to give defendant sufficient notice
of the owner of the property." The motion to quash listed Jones as the owner of the property. This
was sufficient notice to Holz. In her brief, while Holz "acknowledges that generally an allegation
of a person as the owner is sufficient to give an accused sufficient notice, . . . the owner was alleged
to be an agent for the U.S.D.A. Rural Development, an abbreviated name that should not be
sufficient to withstand a motion to quash." As the argument relating to the abbreviation was not
included in the motion to quash, we decline to address it.

Also, the motion to quash stated that "the defendant shows that her attorney has researched
the indices for real property records . . . and finds neither a record of ownership in Joe B. Jones or
U.S.D.A. Rural Development." This statement to the merits of the case in the motion to quash did
not address the sufficiency of notice of the owner, and would not serve as a basis to quash the
indictment. The trial court did not err in overruling Holz's motion to quash the indictment.

(5) No Fatal Variance Existed Between the Indictment and the Proof


Holz also claims there was a fatal variance between the property owner alleged in the
indictment and the owner proved at trial. She notes that the actual name of the owner of the property 
was the United States of America. However, as previously explained, the indictment states that
Jones is special owner of the property, an undisputed fact. Holz does not contend that Jones was
without greater right of possession, and does not describe how the alleged variance prejudiced her
substantial rights. We have also already determined that the indictment sufficiently informed Holz
of the offense such that she could prepare an adequate defense. 

"[A] hypothetically correct charge need not incorporate allegations that give rise to
immaterial variances." Gollihar, 46 S.W.3d at 256. When faced with a sufficiency of the evidence
claim based on a variance between the indictment and proof, only a material variance, i.e., one that
prejudices the defendant's substantial rights, will render the evidence insufficient. Id. at 257. When
reviewing such a variance, we determine whether the indictment informed the defendant of the
charge against him or her sufficiently to allow preparation of a defense, and whether the State under
the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later
for the same crime. Id. 

The Fifth Amendment to the United States Constitution, and Article I, Section 14, of the
Texas Constitution, prohibit double jeopardy and protect individuals from being tried twice for the
same offense, possibly receiving double punishments. Albernaz v. United States, 450 U.S. 333, 343
(1981); Illinois v. Vitale, 447 U.S. 410, 415 (1980); Stephens v. State, 806 S.W.2d 812, 814-15 (Tex.
Crim. App. 1990). In the event of a subsequent prosecution, the entire record, not just the indictment
is reviewed to ensure protection from double jeopardy. Gollihar, 46 S.W.3d at 258. Since the home
address, deeds, tax record, contract for sale, and testimony regarding the actual owner of the property
could be used in any subsequent prosecution, a conviction under the indictment in this case would
bar prosecution of criminal mischief for damage to this house specially owned by Jones, regardless
of the owner's name alleged in the indictment. See In re J.M.R., 149 S.W.3d 289, 295 (Tex.
App.--Austin 2004, no pet.). Thus, there was no material variance between the indictment and
proof, and this point of error is overruled.

(6) No Jury Charge on the Defense of Necessity Was Required

Where a defensive issue is raised by the evidence, a defendant is entitled to an affirmative
instruction in the jury charge, regardless of the strength, weakness, or credibility of the evidence. 
Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). This is a matter of law, which we
review de novo. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

The defense of necessity would be available to Holz if the evidence demonstrated: (A)  she
 reasonably  believed  her  conduct  was  immediately  necessary  to  avoid  imminent  harm; (B) the
desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards
of reasonableness, the harm sought to be prevented; and (C) no legislative purpose existed to exclude
the defense. Tex. Penal Code Ann. § 9.22 (Vernon 2003). We review the evidence offered in
support of the necessity defense in the light most favorable to Holz, and assess any justification
based on necessity from her standpoint. Wood v. State, 271 S.W.3d 329, 333 (Tex. App.--San
Antonio 2008, pet. ref'd). 

The evidence presented in support of the defense was Holz's testimony that it was necessary
to keep the dogs inside the house because someone had destroyed a portion of the fence where she
had kept them, and the dogs would otherwise be at risk. Holz claimed that although she had restored
the fence, there were some dogs which were so sick, they needed to be fed with syringes. With the
exception of the need to feed the animals, no further justification or description of imminent harm
is briefed. Holz did not explain why the dogs had to reside inside the house rather than be placed
with the other dogs in the outdoor pens left intact. She also provided no justification for why the
dogs remained inside the house, destroying the property, after the fence was replaced. 

Holz's belief that housing the dogs inside was necessary can be deemed unreasonable as a
matter of law if there is a complete absence of immediate necessity or harm. Arnwine v. State, 20
S.W.3d 155, 159 (Tex. App.--Texarkana 2000, no pet.). Imminent harm is one that "requires an
emergency situation where a split-second decision is necessary to avoid that harm." Wood, 271
S.W.3d at 334. The harm "must be impending, not pending; that is, it must be on the 'point of
happening, not about to happen.'" Washington v. State, 152 S.W.3d 209, 212 (Tex. App.--Amarillo
2004, no pet.) (quoting Smith v. State, 874 S.W.2d 269, 272-73 (Tex. App.--Houston [14th Dist.]
1994, pet. ref'd). We conclude there was no evidence presented to the jury that risk to the dogs from
starvation or otherwise was an imminent, rather than a theoretical threat, requiring keeping them
inside the house.

Moreover, before one can properly raise the defense of necessity, he or she must admit to
having committed criminal mischief . Young v. State, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999);
Arnwine, 20 S.W.3d at 158. Holz's argument on appeal makes clear that she seeks to use the defense
of necessity, coupled with the belief that she owned the house, to rebut the State's evidence that she
had the requisite criminal mischief mens rea. Texas law clarifies 

with respect to defenses such as necessity . . . when the defensive evidence merely
negates the necessary culpable mental state, it will not suffice to entitle the defendant
to a defensive instruction. Rather, a defensive instruction is only appropriate when
the defendant's defensive evidence essentially admits to every element of the offense
including the culpable mental state, but interposes the justification to excuse the
otherwise criminal conduct.


Shaw v. State, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007) (citing Young, 991 S.W.2d at 838). 
Because Holz did not admit she committed criminal mischief, and her defensive "posture serve[d]
only to negate the culpable mental element of the offense," the trial court did not err in refusing the
necessity defense instruction. See Shaw, 243 S.W.3d at 660; Young, 991 S.W.2d at 839. Holz's last
point of error is overruled. 

 We affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 19, 2009

Date Decided: September 30, 2009


Publish



1. Malik controls "even in the absence of alleged jury charge error." Gollihar v. State, 46
S.W.3d 243, 255 (Tex. Crim. App. 2001). 
2. Holz argues her belief that she had a right to possess the property was reasonable because
the contract for sale stating, "The purchaser will close with the property vacant; subject to the
Purchaser's own occupancy only," entitled her to immediately move in. She ignores the language
making the contract for sale contingent upon agency approval of the credit sale. 
3. Holz complains that the evidence was insufficient to show "USDA, Rural Development,"
had title to the property. Because we determine Jones was alleged to be the special owner, and
because legal and factual sufficiency are evaluated based on the hypothetically correct jury charge,
we need not assess this contention. We do, however, analyze whether the trial court should have
quashed the indictment or whether a material variance existed between the indictment and proof. 
4. Damages "is not the issue here; the statutory measure is the 'amount of pecuniary loss' as
defined by Section 28.06 of the Texas Penal Code." Lackey, 2009 WL 1884421, at *5. 
5. Definitions of the word "destroy" listed in Cullen include "to reduce (an object) to useless
fragments, a useless form, or remains, as by rending, burning, or dissolving; injure beyond repair or
renewal" and "to ruin completely, spoil so that restoration is impossible." 832 S.W.2d 796 at n.2.
6. We agree with Holz's contention that expert testimony or testimony from a person with
personal knowledge is required to establish cost of repair, and that a mere estimate, without more,
is not sufficient to establish cost of repair. See generally Elomary, 796 S.W.2d at 192-93; Deas v.
State, 752 S.W.2d 573, 576 (Tex. Crim. App. 1988); English v. State, 171 S.W.3d 625, 629 (Tex.
App.--Houston [1st Dist.] 2005, no pet.); Sebree v. State, 695 S.W.2d 303, 305 (Tex.
App.--Houston [1st Dist.] 1985, no pet.). However, since there is sufficient evidence to prove the
property was destroyed, and pecuniary loss is measured by fair market value, rather than cost of
repair, Holz's arguments and cited caselaw are inapplicable. 
7. The tax receipt valued the land separately at $1,000.00.