Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





ANA RETANA,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-05-00173-CR



Appeal from


 243rd District Court


of El Paso County, Texas


(TC # 20040D01365)





O P I N I O N



 Ana Retana appeals her conviction of criminal mischief. A jury found Appellant guilty and
the court assessed punishment at confinement in the state jail for two years, probated for four years. 
We affirm.

FACTUAL SUMMARY


 On January 30, 2004, Patricia Duran Sr. (Duran) went to Andale Restaurant for a celebratory
dinner with her sister, Dr. Estela Robinson, and Dr. Robinson's office staff. Duran's daughter,
Patricia Duran Jr. (Patricia), also attended the dinner. Appellant had previously worked for
Dr. Robinson but was not invited to the party. At some point during the evening, Duran saw
Appellant in the restaurant. Appellant appeared to be intoxicated. She walked up to the table and
began drinking Dr. Robinson's beer. She then kneeled down at the table and began arguing with her. 
Dr. Robinson and other guests at the table told Appellant to leave. Dr. Robinson left the table and
went into the bar with Appellant to speak with her. Duran knew Appellant and was familiar with
her past behavior. Believing something bad was about to happen, she left the table to talk to the
manager and ask for his assistance in getting Appellant to leave. As she and the manager walked
into the bar, she saw Appellant pushing Robinson. (1) The manager then asked Appellant to leave. 
Expecting more trouble, Duran called 911. Appellant eventually left the restaurant.

 Patricia decided to leave at about the same time. In the parking lot, she saw Appellant
standing over the hood of Duran's car with an object in her hand. Although Patricia said she saw
Appellant "keying" her mother's Pontiac Aztec, she did not know what object Appellant had in her
hand. She demonstrated for the jury what Appellant was doing, saying, "She had something in her
hand and she was going like this, forward." Patricia went back into the restaurant, found her uncle,
Johnny Robinson, and told him that Appellant was doing something to their car. Robinson and
Duran went outside and found large scratches on the Aztec and on a Dodge Durango driven by
Patricia. In the meantime, Appellant had gone back inside of the restaurant and was seated in the
bar. Appellant's sister and brother-in-law arrived and Duran told them that Appellant had scratched
her vehicle. They went inside and found Appellant in the bar. As they escorted her from the
building, Appellant broke away and struck Duran in the face with a closed fist. The trial court
admitted a photograph showing the injuries to Duran's face.

 Appellant invited her sister, Laura Jauragui, to go hear some live music at Andale Restaurant
on the evening of January 30, 2004. Jauragui at first declined but she and her daughter went to the
restaurant after learning from another sister, Sylvia Espalin, that the Robinsons were at the restaurant
and Appellant was there by herself. Jauragui knew "there was going to be trouble if [Appellant] was
by herself." Jauragui went with the intention of leaving her daughter to stay with Appellant. While
looking for a parking space, Jauragui saw the Robinsons' housekeeper, Pilar, walking by some
vehicles parked in front. Pilar had what appeared to be a key in her hands and she squatted down
by the vehicles. Sylvia Espalin also called yet another sister, Blanca Retana. As a result of their
conversation, Blanca and her brother-in-law, Gabriel Espalin, went to the restaurant to pick up
Appellant because they did not want her there by herself with the Robinsons. They saw a police
officer in the parking lot when they arrived. They entered the restaurant and found Appellant in the
bar. As they walked her out of the restaurant, they came upon Johnny Robinson and Duran waiting
for them by the entrance. Johnny, who was closer to them, started yelling, "We finally got you." 
Johnny grabbed Appellant by her right hand and she "got him by the mouth." As Blanca attempted
to separate them, Duran charged over with a cell phone in her hand. Appellant broke free and tried
to strike the cell phone but struck Duran's face instead. The police officer arrested Appellant for
assaulting Duran. A grand jury subsequently indicted Appellant for two counts of criminal mischief
over $1,500 but less than $20,000 in connection with the damage to the Aztec and Durango. 

 Appellant testified that she was trying to find a band to play at her parent's fiftieth wedding
anniversary so she went to Andale's that night to listen to the band. When Appellant saw the
Robinsons and other people from the office, she walked over to say hello. She felt embarrassed
because she was there by herself. She told Dr. Robinson that she knew there would be trouble when
Duran showed up. Dr. Robinson was angry with Appellant and jealous because she was there by
herself. While they were talking in the bar, Duran walked over and asked Appellant what she was
doing there and demanded that Dr. Robinson leave Appellant alone. Duran was furious because
Dr. Robinson was talking to her. Duran did not like Appellant because she and Dr. Robinson had
maintained a lesbian relationship for several years. Dr. Robinson asked Appellant to go home but
she refused. Both Duran and Dr. Robinson walked away and left Appellant in the bar. She sat down
and began drinking with a man who offered to buy her a beer after overhearing the argument. She
called her sister, Sylvia, and told her that she was there by herself and there was going to be trouble. 
She also wanted someone to drive her home because she had been drinking. She did not leave the
bar until Gabriel and Blanca arrived. As they exited the restaurant, Appellant saw Johnny standing
in front of her and he began yelling at her. Johnny grabbed her hand and "somehow [her] fingers
went in his mouth and he was biting." When Appellant saw Duran approaching her, she thought
Duran was going to hit her with the cell phone in her hand, so Appellant tried to knock the phone
out of her hand. Appellant denied scratching the cars.

 Duran was the registered owner of both vehicles damaged that evening. Adan Lopez, who
is employed at the Midway Chevrolet Collision Center, had twenty-three years' experience in
estimating the cost to repair damage to vehicles. He estimated that the cost to repair the damage to
the Pontiac Aztec was $3,200 to $3,400, and the cost to repair the Durango was between $2,750 and
$3,000. The jury rejected Appellant's defense and found her guilty of both counts of criminal
mischief.

LEGAL AND FACTUAL SUFFICIENCY


 In Point of Error One, Appellant challenges the legal and factual sufficiency of the evidence
supporting her conviction. More specifically, she argues that the evidence is insufficient to prove
that the amount of pecuniary loss was more than $1,500 but less than $20,000. She also alleges that
the State failed to prove that the object used to commit the offense was unknown to the grand jury.

Standards of Review


 In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). We consider all
of the evidence, whether admissible or inadmissible. Wilson v. State, 7 S.W.3d 136, 141
(Tex.Crim.App. 1999); Johnson v. State, 967 S.W.2d 410, 412 (Tex.Crim.App. 1998). We do not
resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier
of fact to do so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the
explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted
at trial in a light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843.
Further, the standard of review is the same for both direct evidence and circumstantial evidence
cases. Geesa, 820 S.W.2d at 158.

 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In performing
our review, we are to give due deference to the fact finder's determinations. See id. at 8-9; Clewis,
922 S.W.2d at 136. The fact finder is the judge of the credibility of the witnesses and may "believe
all, some, or none of the testimony." Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App.
1991). Evidence is factually insufficient if it is so weak that it would be clearly wrong and
manifestly unjust to allow the verdict to stand, or the finding of guilt is against the great weight and
preponderance of the available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we
must consider in conducting a factual sufficiency review is whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine confidence in the fact finder's determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof. See id. Under the first prong of
Johnson, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply
because, on the quantum of evidence admitted, we would have voted to acquit had we been on the
jury. Watson v. State, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of
Johnson, we cannot declare that a conflict in the evidence justifies a new trial simply because we
disagree with the jury's resolution of that conflict. Id. Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of the evidence
contradicts the jury's verdict. Id.

Elements of Criminal Mischief


 A person commits an offense if, without the effective consent of the owner: he intentionally
or knowingly damages or destroys the tangible property of the owner. Tex.Penal Code Ann.
§ 28.03(a)(1)(Vernon Supp. 2006). The amount of the pecuniary loss determines the punishment
for the offense. Pertinent to this case, an offense under this section is a state jail felony if the amount
of pecuniary loss is $1,500 or more but less than $20,000. Tex.Penal Code Ann. § 28.03(b)(4). 
The two-count indictment alleged that Appellant intentionally and knowingly damaged a Pontiac
motor vehicle (Count 1) and a Dodge motor vehicle (Count 2) by scratching the vehicles with an
unknown object, without the consent of the owner. Each count of the indictment alleged that
Appellant caused a pecuniary loss in the amount of $1,500 or more but less than $20,000.

Amount of Pecuniary Loss


 If the property is damaged, the amount of pecuniary loss is the cost of repairing or restoring
the damaged property within a reasonable time after the damage occurred. Tex.Penal Code Ann.
§ 28.06(b)(Vernon 2003). There is no requirement that the property actually be repaired. Elomary
v. State, 796 S.W.2d 191, 193 (Tex.Crim.App. 1990). An opinion from an individual who is not
competent to give an expert opinion on repair costs and who merely states his "off-the-wall" lay
opinion or conclusion of what the amount of damages might be or states from hearsay what someone
else said the damages might be is insufficient to prove pecuniary loss. Id. But an opinion from an
individual who is shown to be qualified to give his or her expert opinion of what the fair market
value of the cost of repairs to the damaged property is sufficient to prove pecuniary loss. Id.

 In making her sufficiency arguments, Appellant complains that the trial court erroneously
admitted the expert testimony of Adan Lopez because (1) the State did not provide her with Lopez's
expert report 168 hours prior to trial in violation of the trial court's discovery order; (2) the State
failed to qualify Lopez as an expert witness; and (3) he based his expert testimony on hearsay,
namely, the estimates previously obtained by Duran. These arguments are without merit because we
consider all evidence admitted at trial--including improperly admitted evidence--in conducting both
the legal and factual sufficiency reviews. Wilson v. State, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999);
Ruth v. State, 167 S.W.3d 560, 571 (Tex.App.--Houston [14th Dist.] 2005, pet. ref'd); Arzaga v.
State, 86 S.W.3d 767, 778 (Tex.App.--El Paso 2002, no pet.). Even if Appellant's arguments could
be considered in the context of a sufficiency review, they are without merit. The trial court, after
determining that it would admit Lopez's expert testimony, gave Appellant the opportunity to request
a continuance and promised that such a request would be granted. Appellant did not request a
continuance. Consequently, any complaint that the State violated the discovery order is waived. See
Young v. State, 183 S.W.3d 699, 706-06 (Tex.App.--Tyler 2005, pet. ref'd). Because Appellant did
not object to the State's failure to qualify Lopez as an expert witness, her argument regarding his
qualifications is waived. See Tex.R.App.P. 33.1(a). The Rules of Evidence also permit an expert
witness to base his or her opinion on inadmissible evidence which includes hearsay. See
Tex.R.Evid. 703. Therefore, Lopez's testimony was not inadmissible because he might have based
his opinion on the estimates previously provided to Duran. 

 We turn now to consideration of Lopez's testimony. Lopez was formerly employed at
Crawford Auto Plaza Body as the body shop manager. He spent approximately 80 percent of his
time writing estimates and has twenty-three years of experience in estimating the cost to repair
damage to vehicles. Lopez was currently employed at Midway Chevrolet Collision Center. The
State showed Lopez an estimate from Crawford Auto Plaza Body which purportedly had been
written by him, but he testified that he had left Crawford approximately three weeks before the
estimate was written. He explained that his name appeared on the estimate because his login was
not immediately deleted from his computer work station at Crawford. Lopez would not provide an
estimate based only on the photographs, but during a recess, he examined the vehicles in the parking
garage of the courthouse. He estimated that the cost to repair the Pontiac was $3,200 to $3,400 and
the cost to repair the Dodge was between $2,750 and $3,000. This evidence is legally sufficient to
prove beyond a reasonable doubt that Duran's pecuniary loss was more than $1,500 with respect to
each vehicle. See Elomary, 796 S.W.2d at 194 (holding evidence sufficient to support finding that
fair market value of repair work exceeded $200 where insurance adjuster, who was qualified as an
expert, estimated the damages to complainant's vehicle at $518.40).

 In her factual sufficiency review, Appellant focuses on Lopez's testimony that he was "just
guessing" how much it would cost to repair the Pontiac. When this testimony is considered in
isolation, it seemingly cuts against the accuracy of Lopez's estimate. However, we must consider
all of his testimony, not just isolated portions. The trial court did not permit Lopez to return to his
office and utilize his estimating software to make the estimates as to each vehicle even though that
is what he always uses when making estimates. Thus, he did not have the actual prices of certain
parts, such as the side moldings that would have to be removed and replaced. Although Lopez used
the phrase "just guessing", it is apparent from the context of his testimony that he meant he was
estimating the prices for certain items. Lopez reiterated that the costs to repair all of the damage to
the Pontiac was "very close" to $3,200 to $3,400 and it was definitely over $1,500. Likewise, it was
his opinion that the damage to the Durango would cost more than $1,500 to repair. 

 Having considered all of the evidence in a neutral light, we conclude that it is factually
sufficient to support the jury's determination that the pecuniary loss related to each vehicle was more
than $1,500. See Espinoza v. State, 955 S.W.2d 108, 112 (Tex.App.--Waco 1997, pet. ref'd)
(evidence was factually sufficient to show that value of property damaged in victim's residence was
at least $1,500 where state's expert testified that cost of repairing or replacing damaged items was
at least $1,529 and that to prepare his estimate he examined home, called for material prices, and
estimated labor charges).


Unknown Object


 Appellant also contends that the evidence is legally and factually insufficient to support the
allegation in the indictment that Appellant used an unknown object to damage the vehicles because
some of the State's witnesses testified that the object used was a key and the State did not introduce
testimony from any member of the grand jury that the grand jury attempted but was unable to
identify the object used to commit the offenses. Appellant's argument is based on a line of cases
including Hicks v. State, 860 S.W.2d 419, 424 (Tex.Crim.App. 1993), McFarland v. State, 845
S.W.2d 824, 830-31 (Tex.Crim.App. 1992); and Matson v. State, 819 S.W.2d 839, 847
(Tex.Crim.App. 1991). These cases applied the rule that where the indictment alleges that the object
used was unknown to the grand jury, but the evidence at trial identifies the object, the State must
prove that the grand jury used due diligence in ascertaining the object used. Rose v. State, 76 S.W.3d
573, 574 (Tex.App.--Corpus Christi 2002, no pet.) citing Hicks, 860 S.W.2d at 424; McFarland, 845
S.W.2d at 830; and Matson, 819 S.W.2d at 847. We agree with the State that Appellant's sufficiency
complaints should be rejected because an allegation that an object was in fact unknown to the grand
jury is a non-essential allegation and is disregarded in the hypothetically correct jury charge. See
Rosales v. State, 4 S.W.3d 228, 231 (Tex.Crim.App. 1999)(expressly holding that the rule from
Hicks is no longer viable after Malik (2)). See also Fagan v. State, 89 S.W.3d 245, 248-49 (Tex.App.--Texarkana 2002, pet. ref'd); Rose, 76 S.W.3d at 574; Richards v. State, 54 S.W.3d 348, 350
(Tex.App.--Houston [1st Dist.] 2001, pet. ref'd). For the these reasons, we overrule Points of Error
One and Two.


EXTRANEOUS OFFENSES


 In Points of Error Three and Four, Appellant challenges the admission of three extraneous
assault offenses at trial, i.e., an assault of Dr. Robinson in the bar before the criminal mischiefs took
place, and assaults of both Duran and Johnny Robinson outside the bar after the cars had been
damaged. A trial court's admission of extraneous offenses is reviewed under an abuse of discretion
standard. Prible v. State, 175 S.W .3d 724, 731 (Tex.Crim.App.), cert. denied, ---- U.S. ----, 126
S.Ct. 481, 163 L.Ed.2d 367 (2005). If the trial judge's ruling is within the zone of reasonable
disagreement, there is no abuse of discretion. Id.

Assaults of Duran and Johnny Robinson


 In Point of Error Three, Appellant contends that the extraneous offense evidence pertaining
to Duran and Johnny Robinson was inadmissible under Texas Rule of Evidence 403 because its
probative value was substantially outweighed by the danger of unfair prejudice. The trial court
admitted evidence that Appellant assaulted Duran and Johnny Robinson as she left the restaurant. 
Some of the evidence was elicited by Appellant herself. For example, during cross-examination,
Appellant elicited testimony from Duran that Appellant had been charged with assaulting both Duran
and Johnny, but that the charges had since been dismissed. On re-direct, the State offered
photographs depicting the injuries suffered by Duran when Appellant struck her. Appellant objected
on relevancy grounds since the charges had been dismissed. The trial court overruled the objection
because Appellant had raised the matter in cross-examination. Duran went on to testify, without
objection, that Appellant had hit her with a closed fist. Another witness testified without objection
that Appellant struck Duran. Appellant also elicited testimony from Blanca Retana and Gabriel
Espalin that Appellant had been arrested for assaulting Duran.

 The State initially responds that Appellant's Rule 403 complaint is not preserved because she
made only a general relevancy objection made at trial. We agree. To preserve error for appellate
review, the complaining party must make a timely, specific objection and obtain a ruling. 
Tex.R.App.P. 33.1; Wilson v. State, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002). Further, a party
must continue to object every time inadmissible evidence is offered. Gillum v. State, 888 S.W.2d
281, 285 (Tex.App.--El Paso 1994, pet. ref'd), citing Ethington v. State, 819 S.W.2d 854, 858
(Tex.Crim.App. 1991). Error in the admission of evidence is cured when the same evidence is
admitted elsewhere without objection. Ethington, 819 S.W.2d at 858; Gillum, 888 S.W.2d at 285. 
With respect to extraneous offense evidence, a relevancy objection does not preserve a complaint
that the evidence is inadmissible under Tex.R.Evid. 403. Montgomery v. State, 810 S.W.2d 372,
389 (Tex.Crim.App. 1990)(op. on reh'g). Therefore, Appellant waived her Rule 403 complaint by
failing to object on that ground at trial. See Bell v. State, 938 S.W.2d 35, 49 (Tex.Crim.App. 1996). 
Additionally, her complaint is waived because she did not continue to object each time the evidence
was offered. See Gillum, 888 S.W.2d at 285. Point of Error Three is overruled.

Assault of Dr. Robinson


 In Point of Error Four, Appellant complains that the trial court erred in admitting evidence
of the assault of Dr. Robinson because the State did not give her notice pursuant to Texas Rule of
Evidence 404(b). She additionally argues that the evidence was prejudicial and her right to a fair
trial was denied.

 Prior to trial, the State gave notice of its intent to introduce two assault offenses committed
by Appellant on January 30, 2004. The notice pertained to the assaults of Duran and Johnny
Robinson which took place outside the bar. The State attempted to introduce evidence through
Duran that Appellant pushed Dr. Robinson while they were talking in the bar. Appellant objected
outside the presence of the jury that she had not been given notice and the trial court sustained her
objection. The trial court also sustained her extraneous offense objection when Erika Ontiveros
testified that she saw Appellant grab Dr. Robinson's arm and pull Dr. Robinson while in the bar. 
During the State's rebuttal, Edwin Vasquez, the former manager of Andale, testified that he saw two
women in the bar area exchanging words and one woman pushed the other. The trial court sustained
Appellant's objection that the witness was discussing an "extraneous." At another point in his
testimony, Vasquez said that one woman pushed the other woman into the wall and he had to
separate them. (3) Appellant objected and referred to the court's action in sustaining her previous
objection. The court did not expressly sustain the objection but told the prosecutor that the witness
could not discuss the incident in the bar. Appellant then moved for a mistrial, arguing that the
evidence was prejudicial and its harm could not be cured by an instruction to disregard. She
alternatively requested that all of Vasquez's testimony be stricken. The trial court denied the motion
for a mistrial and did not rule on the request to strike Vasquez's testimony.

 The State responds that the evidence showing Appellant argued with and assaulted
Dr. Robinson inside of the bar is admissible as same transaction contextual evidence, and therefore,
it was not required to give notice under Rule 404(b). Under Rule 404(b), evidence of other crimes,
wrongs, or acts is not admissible to prove the character of a person to show action in conformity
therewith. Tex.R.Evid. 404(b); Wyatt v. State, 23 S.W.3d 18, 25 (Tex.Crim.App. 2000). It may be
admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident. Tex.R.Evid. 404(b); Montgomery, 810
S.W.2d at 388-89. "Same transaction contextual evidence" is evidence reflecting the context in
which a criminal act occurred, recognizing that events do not occur in a vacuum, and a jury has a
right to hear what occurred immediately before and after the offense in order to realistically evaluate
the evidence. Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000). Extraneous offenses
may be admissible as same transaction contextual evidence when "several crimes are intermixed,
or blended with one another, or connected so that they form an indivisible criminal transaction." 
Prible, 175 S.W.3d at 731-32, quoting Rogers v. State, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993). 
This type of evidence results when an extraneous matter is so intertwined with the State's proof of
the charged crime that avoiding reference to it would make the State's case difficult to understand
or incomplete. Id. at 732. The State is not required to give notice of its intent to introduce same
transaction contextual evidence. See Tex.R. Evid. 404(b)(upon timely request, State is required to
give notice of its intent to introduce during its case-in-chief, extraneous offense evidence other than
that arising in the same transaction).

 The evidence at trial showed that Appellant approached the dinner party and began to argue
with Dr. Robinson. The two of them went into the bar to talk privately, but the argument became
physical when Appellant grabbed Dr. Robinson by the arm and pushed or pulled her. Duran and the
restaurant manager saw Appellant push Dr. Robinson and intervened in the altercation. The assault
resulted in Appellant being asked to leave the restaurant by management. The State prosecuted this
case on the theory that the confrontation and the ejection from the restaurant enraged Appellant and
she damaged both of Duran's vehicles which were parked in the front of the restaurant. The
evidence showing that Appellant grabbed, pushed, or pulled Dr. Robinson during an argument in the
bar was necessary for the jury to understand why Appellant was asked to leave the restaurant and her
state of mind. Without this evidence, the jury would have had an incomplete picture of why
Appellant was angry enough to damage the vehicles. We conclude that the evidence was admissible
as same transaction contextual evidence because the offenses are interwoven and avoiding reference
to the confrontation and assault inside of the restaurant would make the State's case difficult to
understand and incomplete. See Harvey v. State, 2002 WL 31525279 (Tex.App.--Austin 2002, pet.
ref'd)(not designated for publication)(evidence of damage to victim's property was relevant and
admissible in prosecution for violating a family protective order, as it was same transaction
contextual evidence; defendant's assault of the victim and subsequent damage to her property could
all be attributed to defendant's continuing anger caused by complainant's revelation that she was
dating someone else). Consequently, the State was not required to give notice under Rule 404(b). 
Because the evidence showing Appellant's assault of Dr. Robinson was admissible, the trial court
did not abuse its discretion by denying Appellant's motion for mistrial. Point of Error Four is
overruled. The judgment of the trial court is affirmed.



April 12, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)

1. The trial court sustained Appellant's objection that she had not been given notice of the State's intent to
introduce this extraneous offense, but Appellant did not ask that the jury be instructed to disregard the testimony. 
2. Malik v. State, 953 S.W.2d 234 (Tex.Crim.App. 1997); 
3. Vasquez could not identify Appellant as one of the women involved in the argument, but he identified Duran
as the sister of one of the women who intervened and helped calm the situation.