Hany M. ELOMARY, Appellant,

v.

The STATE of Texas, Appellee.

No. 1426–89.

Court of Criminal Appeals of Texas, En Banc.

Sept. 26, 1990.

Paul Nugent, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Carol M. Cameron, Rowena Young, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

The record of this cause reflects that a collision occurred between a dark colored Mercedes–Benz automobile, owned by Hany M. Elomary, henceforth appellant, and a white colored Jaguar automobile, owned by Patti Jane Katz, the complainant, at a "Mister Car Wash" place of business in Houston. Appellant was accompanied to the car wash by his two daughters, a 15 year old and a 17 year old. The complainant was by herself. None of these parties knew one another. The incident occurred around 5:00 o'clock p.m. on Sunday, January 17, 1988, at which time "Mister Car Wash" was extremely busy.

There were at least four lanes of traffic at the car wash place of business, with the lanes merging into one lane of traffic to enter the car wash area after one left the gas pumps area. Of course, if one desired to obtain gasoline he first stopped at the gasoline pumps. If he did not want any gasoline, he simply entered the car wash lane of traffic at the first opportunity. If he obtained gasoline, after he had done so, he would pull forward and get in the single lane of traffic that entered the car wash part of the business. In this instance, both Katz and Elomary stopped at the same gasoline pump, she parked on one side of the pump and he on the other side, and had the attendant fill their respective vehicles with gasoline. After the attendant filled

Katz' vehicle with gasoline, Katz observed that her lane of traffic was full but that a small opening space, between appellant's vehicle and the vehicle ahead of him, in what would have been in appellant's lane of traffic, then existed. Katz then drove her Jaguar in front of appellant's Mercedes. When appellant saw what Katz was doing, he started pounding on his car horn and yelling at the attendant who was then filling his vehicle with gasoline "to stop her from maneuvering her car in front of his." The attendant testified that appellant "wanted me to hurry up because somebody was getting in front of him." Appellant then got out of his vehicle, but continued to shout at Katz. By this time, Katz' vehicle was parked at a 45 degree angle in what would have been appellant's lane of traffic. Appellant told Katz to back up her vehicle or he was going to run into it with his vehicle. He threatened to do this at least twice. One of appellant's daughters yelled at Katz, "You'd better move it or he'll hit your car."

Appellant at one time actually told Katz that she could not move her vehicle, and that if she did he would hit her vehicle with his vehicle. However, it appears that at all times, whether appellant was going to hit her car with his car depended on whether or not Katz backed her car out of appellant's lane of traffic. By this time, Katz could not move her Jaguar either forwards or backwards, as she was blocked into the space she then occupied. Katz then asked appellant to move his vehicle backwards so that she could back her vehicle out of his lane of traffic. He refused to do so. Instead, appellant drove his vehicle into Katz' vehicle, denting the left quarter panel area of her vehicle. The front bumper of appellant's Mercedes was also damaged. The police responded and investigated the incident. Charges were filed against appellant either then or later. Interestingly, both vehicles were eventually washed at the car wash place.

Without objection by appellant, Phillip A. Wells, a staff automobile damage appraiser or claims adjuster [1] for United States Automobile Association, whose expertise in appraising automobiles for damages that they had sustained was never challenged by appellant, testified that he had occasion to make an appraisal of Katz' automobile for the damages it had sustained. He did this on January 22, 1988, just a couple of days after the collision that had occurred between Katz and appellant, and he concluded that the fair market value of the repairs that would have to be done to Katz' Jaquar would be $518.40. Appellant did not challenge the value that Wells estimated that the fair market value of the repairs to Katz' vehicle in the Houston vicinity would cost. The record is not clear whether Wells at that time paid Katz the $518.40. Katz testified that although she took her vehicle to Dominion Jaguar to be repaired, the repairs actually occurred at Texas Corvette. Bruce Watkins of Dominion testified that Dominion occasionally referred work to Texas Corvette.

Katz, however, other than testifying that she did not know the exact amount of money that the total repair cost was, testified that the actual cost of the repair work done to her Jaquar could have been less than $200.

The cost of replacing or repairing damaged property controls what punishment shall be assessed for committing the offense of criminal mischief. In this instance, the jury was instructed, inter alia, that if it did not believe that the "pecuniary loss" to Katz' Jaquar was over $200 but under $750 it was required to find appellant not guilty. The jury convicted appellant of criminal mischief in an amount that exceeded $200, but was less than $750, and assessed his punishment at a $400 fine. In reaching its verdict, the jury, of course, was free to believe all, part, or none of the witnesses' testimony. By its verdict, the

---

**1.** An "insurance adjuster" or "claims adjuster" is usually defined to mean "a person, copartnership or corporation who understakes on behalf of one or more insurance companies to ascertain and report the actual amount of the loss to the subject-matter of insurance due to the hazard insured against." *Jensen v. Lincoln Hail Insurance Company*, 125 Neb. 87, 249 N.W. 94, 97 (1933).

jury obviously chose to believe the State's witnesses and disbelieved appellant's witnesses.

On direct appeal, applying the "rational trier of fact" test, and finding there was no evidence that might have established that Katz had actually sustained a pecuniary loss of $200 or more, and further finding that there was no evidence as to the exact cost of the repairs made to Katz' vehicle, the Sixth Court of Appeals reversed the trial court's judgment of conviction and ordered the trial court to enter a judgment of acquittal on appellant's behalf. *Elomary v. State*, 778 S.W.2d 909 (Tex.App.— Texarkana 1989). We will reverse the judgment of the court of appeals.

The trial judge instructed the jury that " 'Value of the pecuniary loss' means the cost of repairing or restoring the damaged property within a reasonable time after the damage, if it did," which definition is taken from V.T.C.A., Penal Code § 28.06(b). In this instance, it was incumbent upon the State to prove that the "pecuniary loss" that Katz' Jaguar automobile had sustained was $200 or more but less than $750. The jury, of course, was free to believe all, part, or none of a witness' testimony.

We granted the State's petition for discretionary review in order to make the determination whether the court of appeals correctly sustained appellant's sole contention that the evidence was insufficient to establish that the value of the pecuniary loss inflicted by appellant was over two hundred dollars as charged in the misdemeanor information under "the rational trier of fact" standard enunciated by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which this Court has consistently adhered to in deciding on appeal whether the evidence is sufficient to sustain the verdict of the trier of fact. See, for example, *Butler v. State*, 769 S.W.2d 234 (Tex. Cr.App.1989). We find that the court of appeals erred in holding under the *Jackson v. Virginia* "rational trier of fact" test that the evidence was insufficient to sustain the jury's verdict.

■ One of the ways that the offense of criminal mischief may be committed is if a person, without the effective consent of the owner, intentionally or knowingly damages or destroys the tangible property of the owner. V.T.C.A., Penal Code § 28.03(a)(1). The amount of the pecuniary loss determines the punishment for the offense.

The court of appeals found that because there was no evidence to establish what the actual cost of repairing Katz' Jaguar was, and that the insurance adjuster's "opinion on the amount of damages, without further evidence, is insufficient to prove the cost of repair or restoration under Section 28.- 06(b)[,] *Sebree v. State*, 695 S.W.2d 303 (Tex.App.—Houston [1st Dist.] 1985, no pet.)," this caused the evidence to be insufficient to support the jury's verdict finding appellant guilty. *Elomary*, supra, at page 910.

However, we find that under the terms of § 28.06, or § 28.03(a)(1), there is no requirement that the damaged property must actually be repaired.

§ 28.06(a) concerns replacement cost, contrary to § 28.06(b), which concerns repair cost. We believe it implicit in subsection (b), where damaged property is subject to being repaired, that the cost of the repair work is conditioned on what the fair market value of such might be.

■ We find that in *Sebree*, supra, the First Court of Appeals correctly ruled that the criminal mischief statute does not require that damaged property that can be repaired be actually repaired in order to establish the cost of the repair work as set forth in § 28.06(b). Given the facts set out *Sebree*, supra, if the following statement relates to an individual who is not competent to give an expert opinion as to repair costs, but is merely giving his "off-the-wall" lay opinion, we also do not disagree with that court's holding that "an estimate of damage or an opinion on the amount of damage *without further evidence* is insufficient to prove the cost of repairs as required by sec. 28.06(b) of the Texas Penal Code." (305). (Our emphasis.)

The distinction between an individual merely stating his opinion or conclusion what the amount of the damages might be, or stating from hearsay what someone else

said what the damages might be, from an individual who is shown to be qualified to give his or her expert opinion of what the fair market value of the cost of repairs to the damaged property might be should always be kept in mind. See Article VII, *Rules of Criminal Evidence.* In *Sebree,* supra, the only evidence that the State presented went to the former, and no evidence was presented by the State to establish the latter. Thus, the First Court of Appeals correctly concluded that the evidence was insufficient to sustain the jury's verdict of guilty. In this instance, we have testimony from Wells, Katz' insurance adjuster, who was shown to be qualified to give his expert opinion of the fair market value of what it was going to cost to repair the damages inflicted by appellant to Katz' Jaguar. Again, there is no requirement in the statute that in order to establish the Class A misdemeanor offense of criminal mischief, it is incumbent upon the State to also establish that repair work to the damaged property actually occurred or took place.

Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that any rational trier of facts could have found beyond a reasonable doubt that the fair market value of the repair work to be done on Katz' Jaguar was more than $200 but less than $750. See *Jackson v. Virginia,* supra. E.g., *Deas v. State,* 752 S.W.2d 573 (Tex.Cr.App. 1988); *Hernandez v. State,* 468 S.W.2d 387 (Tex.Cr.App.1971). Also see and compare *Scott v. State,* 741 S.W.2d 435 (Tex.Cr.App. 1987); *Sullivan v. State,* 701 S.W.2d 905 (Tex.Cr.App.1986); and *Porras v. Craig,* 675 S.W.2d 503 (Tex.1984).

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.

MILLER and CAMPBELL, JJ., concur in the result.

CLINTON, J., dissents.

W.C. DAVIS, J., not participating.