# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00236-CV

**In the Matter of M. S. M.**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-21,532, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

M.S.M. was found to have engaged in delinquent conduct by committing criminal mischief that resulted in a pecuniary loss of $50 or more but less than $500. *See* Tex. Fam. Code Ann. § 51.03 (West Supp. 2008); Tex. Penal Code Ann. § 28.03 (West Supp. 2008). The juvenile court placed M.S.M. on probation for nine months in his father's custody. M.S.M. contends that the evidence is legally and factually insufficient to prove the amount of the pecuniary loss and that the juvenile court erroneously admitted lay testimony regarding the amount of the loss. We will overrule these contentions and affirm the judgment.

A person commits criminal mischief if, without the owner's effective consent, he intentionally or knowingly damages or destroys the owner's tangible property. Tex. Penal Code Ann. § 28.03(a)(1). The seriousness of the offense is determined by the pecuniary loss suffered by the property owner. *Id.* § 28.03(b). In this case, following a series of events that need not be described, M.S.M. kicked the front door of the house occupied by David Moore, his wife Norma, and their children Richard, Dustin, and Candice. The door, which had a metal exterior, was dented

by the kick. The petition alleged that M.S.M. "intentionally and knowingly damage[d] tangible property, to-wit: a door, without the effective consent of Norma Moore, the owner, and thereby caused pecuniary loss to said owner in the amount of more than $50.00 but less than $500."

The penal code prescribes the measure for determining the amount of pecuniary loss in a criminal mischief prosecution. If the property in question is damaged, the pecuniary loss is the cost of repairing or restoring the damaged property. *Id*. § 28.06(b) (West 2003). If the property is destroyed, the pecuniary loss is the fair market value of the property at the time and place of the destruction or, if that value cannot be ascertained, the cost of replacing the property. *Id*. § 28.06(a). In his challenges to the sufficiency of the evidence, M.S.M. contends that the State, having alleged that he damaged the Moores' front door, was required to prove the cost of repairing the door pursuant to section 28.06(b). Instead, he argues, the State proved the cost of replacing the door pursuant to section 28.06(a), a measure M.S.M. contends does not apply because the State did not allege that he destroyed the door.

In his testimony, Dustin Moore described the door and the damage caused by M.S.M. as follows:

> It's I guess an aluminum door. It was kicked in the lower right-hand corner. I mean, it's a dent, I mean, but the only thing is if you—I don't think you can repair it because there wouldn't be no way to pull that dent out. I mean, if you were to bang on the inside part you would dent that part and it wouldn't, you know, come in.

Dustin added that the door "functions still today. It opens up and closes, locks."

David Moore testified:

Q. Okay. And have you made an attempt to determine what it would cost to either repair or replace that door?

A. Due to the fact that the door is a metal outlaying door, without tearing the door apart, there's absolutely no way to fix it, so it has to be totally replaced.

[Defense counsel]: Your Honor, I would object to this witness testifying as to any cost of repair regarding this door. I don't think he's qualified to testify as an expert regarding that matter.

THE COURT: He's not qualified to testify as [an] expert, that's true, but yourobjection is overruled. He can qualify as the owner who—I don't think it requires expert testimony anymore on damages, so I'm going to overrule your objection.

[Defense counsel]: Yes, sir.

Q. . . . And what have you determined would be the least expensive way of proceeding with fixing your damaged door?

A. It will cost $450 to replace the door with a door exactly like mine.

[Defense counsel]: Your Honor, I would again object. I believe the door in question has not been repaired at this point, and I believe under case law this homeowner is not qualified to testify as an expert regarding estimated cost to repair the door.

THE COURT: He's talking about the cost to replace the door on that and I don't think you have to be an expert, and I could be wrong. I don't think you have to be an expert anymore to testify about replacement cost. I think the homeowner can do that. So I'm going to overrule that objection.

During cross-examination, Moore testified:

Q. Okay. And so your testimony is because it's a metal door it's not able to be repaired. You're going to have to totally replace that door?

3

A. Yes, ma'am.

Q. So it's been destroyed?

A. The door has not been destroyed, no, ma'am.

Q. Okay. But it's not repairable?

A. Right.

During redirect examination, Moore testified:

Q. And have you had a chance to price items in Lowe's and Home Depot and that kind of thing?

A. Yes, sir, I have.

Q. And is this type of door available at those places?

A. Yes, sir, it is.

Q. And did you personally research the cost?

A. Yes, sir, I did.

Q. And did you talk to anyone there about the possibility of repair?

A. Yes, sir, I did.

Q. Do you think that doing the crudest bondo type repair on this door you would end up spending at least $50.

A. Yes, sir, easily.

Q. And what would that do to the appearance of your home to take that route?

A. I don't think that it would do the—or fix the damage. I would have to take the door totally apart in order to fix the damage. I'm not qualified to do that. I'd end up having to hire someone to do that.

4

In addition to this testimony, four photographs of the door were introduced in evidence. The copies in the record are not clear, but it is apparent that the damage to the door was essentially cosmetic.

The juvenile court stated its findings regarding the amount of the pecuniary loss as follows:

> There was testimony of both repair and replacement. At some point it gets very hypertechnical whether something is damaged beyond repair, which I guess means the same as destroyed, but that may be damaged or damaged beyond repair or destroyed. This door was not destroyed. It functioned. It was damaged. There were two ways to compensate for that damage. One was to replace it at a cost of $450. One was to attempt to repair it by dismantling it and somehow getting rid of the dent and putting it back together, and that was more than $50. So that gives the penalty range or the value range in between $50 and $500.

Adjudications of delinquency are based on the criminal standard of proof. Tex. Fam. Code Ann. § 54.03(f) (West Supp. 2008). Therefore, we review the sufficiency of the evidence by applying the standards applicable to challenges to the sufficiency of the evidence in criminal cases. *In re E.P.*, 963 S.W.2d 191, 193 (Tex. App.—Austin 1998, no pet.). In a legal sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In a factual sufficiency review, we view all the evidence in a neutral light and determine whether the verdict is clearly wrong and manifestly unjust or against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

The State contends that M.S.M. failed to preserve his factual sufficiency complaint because he did not file a motion for new trial as required by the rules of civil procedure. *See* Tex. R. Civ. P. 324(b)(2); *see also* Tex. Fam. Code Ann. § 51.17(a) (West Supp. 2008); *In re J.B.M.*, 157 S.W.3d 823, 827 (Tex. App.—Fort Worth 2005, no pet.). M.S.M.'s adjudication hearing was a bench trial, however, and rule 324(b)(2) applies only to jury findings. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 197 (Tex. App.—Austin 1992, no writ). M.S.M.'s factual sufficiency complaint is properly before us.

Citing David Moore's testimony that the door could not be repaired and that a new door would cost $450, M.S.M. asserts that the State failed to prove the cost of repairing the damaged door and hence failed to prove that the pecuniary loss was greater than $50. Alternatively, M.S.M. argues that the State proceeded on the theory that he destroyed the door, a theory not alleged in the petition, and thus there is a fatal variance between the pleading and the proof.

M.S.M.'s arguments overlook Moore's testimony that he explored the possibility of repairing the door and that the "crudest bondo type repair" would cost at least $50. The juvenile court cited this testimony in its findings regarding the pecuniary loss. Viewed in the light most favorable to the result, this testimony supports the court's finding that it would cost $50 or more to repair the damage to the door. There is no evidence that the cost of repairing the door would be less than $50.[1] Viewing the evidence in a neutral light, we conclude that the court's finding regarding the cost of repair was neither manifestly unjust nor against the great weight of the evidence. Finally,

---

[1] M.S.M.'s mother testified that she went to the Moores' house after the incident and saw no damage to the door. M.S.M. does not, however, challenge the finding that the door was damaged.

6

we find no variance between the pleading and the proof. Whatever the relevance of the testimony regarding the cost of a replacement door, the State's theory at all times was that M.S.M. had damaged the door, and this is what the juvenile court found. M.S.M. does not contend that the evidence fails to show that the door was damaged. Issues one and two are overruled.

M.S.M.'s remaining contention is that the juvenile court erred by overruling his objection that David Moore was not qualified to estimate the cost of repairing the damaged door. *See Elomary v. State*, 796 S.W.2d 191, 193 (Tex. Crim. App. 1990) (expert testimony required to prove cost of repairs not yet made). The testimony to which M.S.M. objected did not relate to the cost of repairing the door, however, but to the cost of replacing the door. M.S.M. did not object to Moore's testimony that it would cost at least $50 to repair the door. Because the latter testimony is sufficient to support the juvenile court's finding regarding the pecuniary loss, any error in overruling M.S.M.'s objection to the replacement cost testimony was harmless. *See* Tex. R. App. P. 44.2(b); *see also In re C.R.*, 995 S.W.2d 778, 785 (Tex. App.—Austin 1999, pet. denied). Issue three is overruled.

The juvenile court's judgment is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: December 4, 2008

7