

# IN THE
# TENTH COURT OF APPEALS

## No. 10-18-00237-CR

**RUFUS EARNEST SIMS, JR.,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 66th District Court**
**Hill County, Texas**
**Trial Court No. 39,415**

## MEMORANDUM OPINION

In one issue, appellant, Rufus Earnest Sims Jr., argues that the evidence is insufficient to support his conviction for criminal mischief causing pecuniary loss of $2,500 or more but less than $30,000, a state-jail felony. *See* TEX. PENAL CODE ANN. § 28.03(a)(1), (b)(4)(A) (West 2019). We affirm.

# I. STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.
>
> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically

correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

A person commits the offense of criminal mischief when he intentionally or knowingly damages or destroys tangible property without the effective consent of the owner. TEX. PENAL CODE ANN. § 28.03(a)(1); *see Miller v. State*, 343 S.W.3d 499, 501 (Tex. App.—Waco 2011, pet. ref'd). The amount of pecuniary loss determines the degree of the offense. *See Miller*, 343 S.W.3d at 501. In the instant case, appellant was charged and convicted of a state-jail felony, which is characterized as, among other things, causing pecuniary loss in an amount greater than $2,500 but less than $30,000. *See* TEX. PENAL CODE ANN. § 28.03(b)(4)(A).

Section 28.06 of the Penal Code determines the amount of pecuniary loss in a criminal-mischief case. *See id.* § 28.06 (West 2019). Specifically, section 28.06 provides, in relevant part, that:

(a) The amount of pecuniary loss under this chapter, if the property is destroyed, is:

(1) the fair market value of the property at the time and place of the destruction; or

(2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the destruction.

(b) The amount of pecuniary loss under this chapter, if the property is damaged, is the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred.

. . .

(d) If the amount of pecuniary loss cannot be ascertained by the criteria set forth in Subsections (a) through (c), the amount of loss is deemed to be greater than $750 but less than $2,500.

*Id.* § 28.06(a)-(b), (d).

## II.    ANALYSIS

In his sole issue on appeal, Sims asserts that the evidence is insufficient to prove pecuniary loss of $2,500 or more.  More specifically, Sims argues that the State failed to offer any evidence regarding fair market value of the destroyed cell door or whether a fair market value for the cell door can be ascertained.  Thus, Sims contends that the trial court's judgment should be modified to reflect a conviction for the lesser-included offense of criminal mischief causing pecuniary loss of $750 or more but less than $20,000 and remanded to the trial court for a new punishment hearing.

The evidence adduced at trial shows that Sims was stopped by police for failing to wear a seatbelt while driving.  During the stop, law enforcement learned that Sims had an outstanding warrant, which resulted in his arrest.  When taken to the booking area of the jail, Sims refused to hold the sign under his face for the book-in photograph.  Because

of his non-compliance with the booking procedures, Sims was placed in a holding cell until a municipal judge determined how to proceed. This enraged Sims.

While in the holding cell, Sims beat loudly on the door and kicked the jail-cell door at least twice. The cell door rattled loudly after Sims kicked it. Thereafter, jailers determined that Sims had damaged the cell door. Clay Sparks, Captain of the Hillsboro Police Department, testified that the cell door that had been damaged by Sims was no longer structurally sound and, thus, needed to be replaced.[1]

With regard to the process for replacing the cell door, Captain Sparks explained,

> The Hillsboro facility was purchased from the County. It was the county jail facility prior to Hillsboro—the City of Hillsboro purchasing the building. And so therefore, this door—the original door that's in Exhibit 5 was installed by the County, from what I can gather, in 1984, somewhere in that area. And they weren't there, so then I contacted the Hill County Sheriff's Department, who originally built the facility, and contacted their maintenance personnel Bill Bentley . . . who advised me that Southern Folger would be the—the contact to have this damage estimated and repaired.

Captain Sparks noted that, other than Southern Folger, there are no other jail-door companies in Texas. As such, Captain Sparks requested that Southern Folger provide an estimate of the damages.

---

[1] In describing how the cell door damaged by Sims was structurally unsound, Captain Sparks agreed that the cell door was "in danger of the bolt releasing from the latch if the door was assaulted further." He also noted that "I believe you can see that in Exhibit 5 where the structure of the—that encloses the lock had been compromised to which point further force would cause that to come out."

For a door that is equivalent to the cell door destroyed by Sims, Southern Folger quoted Captain Sparks $5,000. According to Captain Sparks, this quote included the installation of the cell door, as well as "furnishing, the hardware." Captain Sparks was able to salvage the brass from the old door, which saved an additional $5,000 from the quote. The representative from Southern Folger advised "that the door, structurally, to remove it and repair it, would be more than putting a new door. So therefore, he came up with a new door."

The City of Hillsboro approved the request for Southern Folger to replace the cell door and paid the company $5,000. Captain Sparks then reported the damaged cell door to the Texas Municipal League insurance company. The insurance company paid the $5,000 claim, less a $2,500 deductible.

On appeal, Sims argues that the State did not offer any evidence regarding the fair market value of the cell door that he destroyed, nor did the State offer any evidence that the fair market value could not be ascertained. We disagree.

The application portion of the jury charge, which mirrored the indictment, stated that:

> [O]n or about the 26th day of October 2016, in Hill County, Texas, the Defendant RUFUS EARNEST SIMS, JR., did then and there intentionally or knowingly damage or destroy tangible property, to wit: cell door, without the effective consent of the City of Hillsboro, the owner of said property, and did thereby cause pecuniary loss of $2,500 or more but less than $30,000 to the owner . . . .

"Destroy" could refer to total or partial destruction. *Adams v. State*, 222 S.W.3d 37, 48 (Tex. App.—Austin 2005, pet. ref'd) (citing *Cullen v. State*, 832 S.W.2d 788, 796-97 (Tex. App.—Austin 1992, pet. ref'd)). In this case, Captain Sparks noted that the cell door damaged by Sims was structurally unsound and beyond repair. Furthermore, the representative from Southern Folger purportedly advised that repairing the old cell door would cost more than to purchase a new cell door. Accordingly, Captain Sparks had but one option—to replace the cell door because it was destroyed by Sims. *See Adams*, 222 S.W.3d at 48; *see also Cullen*, 832 S.W.2d at 796-97. And because the old cell door was destroyed by Sims, section 28.06(a) governs the determination of the amount of pecuniary loss. *See* TEX. PENAL CODE ANN. § 28.06(a); *see also Elomary v. State*, 796 S.W.2d 191, 193 (Tex. Crim. App. 1990) ("§ 28.06(a), concerns replacement cost, contrary to § 28.06(b), which concerns repair cost . . . .").

With regard to pecuniary loss in criminal-mischief cases, the Court of Criminal Appeals has stated:

> With respect to criminal mischief by destruction, an owner's testimony estimating the value of the property is generally sufficient evidence of the fair market value of the property in terms of the cost to replace the property, even without a specific statement as to the cost of replacement. With respect to criminal mischief by damage, we have held that an insurance adjuster's testimony about payment to the owner is sufficient to prove the cost of repair. And in *Holz*, we clarified that an unsupported lay opinion as to the value of damage is insufficient to prove the cost of repair, but the State need not present expert testimony to prove the cost of repairing the property.

*Campbell v. State*, 426 S.W.3d 780, 784 (Tex. Crim. App. 2014) (internal citations omitted).

As noted above, the record contains not only Captain Sparks's testimony regarding the cost of replacing the cell door but also an estimate from Southern Folger detailing the cost to install the door and to furnish the door and hardware. The written estimate from Southern Folger was included in the record. Additionally, the record contains evidence that the City of Hillsboro paid $5,000 for the door and that the Texas Municipal League insurance company valued the loss at $5,000 minus the $2,500 deductible. This is further indication of the fair market value of the property at the time and place of the destruction. *See* TEX. PENAL CODE ANN. § 28.06(a)(1); *see also Evans v. State*, 2014 Tex. App. LEXIS 6543, at *8 (Tex. App.—San Antonio June 18, 2014, no pet.) (mem. op., not designated for publication) (concluding that the evidence supporting the alleged pecuniary loss was sufficient because "[u]nlike the facts in the cases cited by Evans, here, there was other testimony presented before the trial court. Ramon Avila, the individual from Millennium's Image with the expertise to prepare an estimate, testified without objection before the trial court. He not only provided a written estimate, but explained that because the door panels were plastic, they could not be repaired and replacement was the only option").

Viewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have concluded that the pecuniary loss suffered, as a result of Sims's actions, was $2,500 or more but less than $30,000. *See* TEX. PENAL CODE ANN. § 28.06(a); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Zuniga*, 551 S.W.3d at 732-33; *see also*

*Campbell*, 426 S.W.3d at 784; *Sullivan v. State*, 701 S.W.2d 905, 909 (Tex. Crim. App. 1986).

We therefore hold that the evidence supporting Sims's conviction in this case is sufficient.

*See* TEX. PENAL CODE ANN. § 28.03(a)(1), (b)(4)(A); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Zuniga*, 551 S.W.3d at 732-33.  We overrule Sims's sole issue on appeal.

### III.    CONCLUSION

We affirm the judgment of the trial court.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Neill
Affirmed
Opinion delivered and filed July 17, 2019
Do not publish
[CR25]

