

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00027-CR
_____

ZIMBABWE RAYMOND JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 21M0630-CCL

Before Morriss, C.J., Stevens and van Cleef, JJ.
Opinion by Justice Stevens

# OPINION

While driving in Bowie County, Zimbabwe Raymond Johnson collided with a Southwest Electric Power Company (SWEPCO) utility pole and an antique truck. Johnson was charged with the misdemeanor offenses of failing to perform his statutory duty on striking a structure, fixture, or highway landscaping involving damages greater than or equal to $200.00[1] and failure to perform his statutory duty when being involved in an accident involving more than $200.00 in damages to a vehicle.[2] The jury found Johnson guilty of attempted failure to perform his statutory duty on striking a structure and attempted failure to perform his statutory duty when being involved in an accident involving damage to a vehicle[3]. The jury assessed a $200.00 fine in each case. In addition to the fines, the trial court ordered restitution in the amount of $200.00 for damage to the pole and $10,000.00 for damage to the truck.

Johnson appeals from his conviction for attempted failure to perform his statutory duty on striking a structure.[4] Johnson contends that (1) the evidence was legally insufficient to prove the value of the utility pole, (2) the trial court erred in ordering restitution because the damage to the utility pole was not a direct result of the crime for which he was convicted, and (3) the trial court erred by assessing a $200.00 concurrent fine.

---

[1]TEX. TRANSP. CODE ANN. § 550.025(b)(2)

[2]TEX. TRANSP. CODE ANN. § 550.022(c)(2).

[3]TEX. TRANSP. CODE ANN. § 542.303(a) ("A person who attempts to commit or conspires to commit an act declared by this subtitle to be an offense is guilty of the offense.").

[4]Johnson appeals from his conviction for attempted accident involving a vehicle in our cause number 06-22-00028-CR.

Because we find that the offense for which Johnson was convicted was not the proximate and "but for" cause of the damage to the utility pole, we modify the trial court's judgment by deleting the award of $200.00 in restitution. As modified, we affirm the trial court's judgment because (1) there was legally sufficient evidence for the jury to conclude that the utility pole suffered $200.00 or more in damages, and (2) the trial court did not err in assessing a $200.00 concurrent fine.

## I.  Factual and Procedural Background

On April 1, 2021, Tabitha Ray was in her backyard when she heard a "big crash." She went into her front yard and saw that a maroon car had collided with her husband, Tommy's, truck. The truck was an antique, yellow, 1954 Chevrolet in "very rare" condition; that was her husband's "baby." The car backed up, "trying to navigate around" the truck, but one of the front wheels was damaged, "so [the driver] couldn't steer it very well" and the car hit the truck again. She testified that the car then drove down the street, and she thought the car was trying to leave the scene, but it finally came to a stop. The driver of the car got out, started speaking with some of Ray's neighbors, and remained on the scene until the police arrived. Ray called law enforcement and took photographs of the car and the utility pole. The photographs were admitted into evidence and published to the jury. Ray testified that the driver, later identified as Johnson, never tried to speak to her about the collision or provide her with his insurance information.

Alana Dixon, one of Ray's neighbors, testified that, on April 1, 2021, the lights in her home went off, and her daughter told her that a "man hit the pole." Dixon then went outside to

3

see what had happened. When she got outside, she saw a "young man in a car, and he was trying to leave the scene." She saw a "telephone pole in half across the street." She identified Johnson as the young man she saw "hit a car and a telephone pole in front of the Rays' house." Dixon testified that Johnson "just drove off" to the end of the street where he stopped at the stop sign. Johnson was having trouble controlling the car because "[o]ne of his tires was not moving." Although she admitted that Johnson was still at the end of the road when the police arrived, she believed that Johnson was trying to leave the scene and that the only reason Johnson did not actually leave the area was because his car was too badly damaged.

Carmine Smith was at the home of Ray's neighbor at the time of the collision. Smith testified that he was inside when he heard a sound "like a transformer had exploded." Dixon's daughter came inside and said that "someone just hit the pole," and Smith ran outside "to see if someone was okay." He saw Johnson trying to move the car away from the yellow truck, but it was moving slowly because "only one wheel was moving." After he had hit the telephone pole and the truck, Johnson was "trying to drive off," but he stopped the car down the street.

Rusty Hill, a police officer with the New Boston Police Department, was called to the scene of the collision. When he arrived, he saw Johnson's maroon car "halfway in the road at an intersection with ball joints broken in the front and a telephone pole that had been hit." The car was stopped "[o]ver a thousand feet" from the scene of the collision. Hill did not take photographs of the vehicles or the accident scene, but a recording from Hill's body camera was admitted into evidence and played for the jury. Hill spoke with Johnson, who informed him that he had been "involved in a wreck." Hill testified that, from the position of Johnson's car in

4

relation to the damaged pole, "[y]ou could tell he was trying to leave the scene." Hill observed that Johnson was "on the phone with somebody trying to get out of there." Johnson had not spoken to Ray or left his insurance information.

By two separate informations, Johnson was charged with failing to perform his statutory duty (1) on striking structure, fixture, or highway landscaping (duty on striking structure) and (2) after an accident involving damage to a vehicle. The first charge alleged that Johnson did then and there:

> having been the operator of a vehicle involved in an accident resulting only in damage of $200 or more to a structure adjacent to a highway or a fixture legally on or adjacent to a highway, to wit: A Swepco electric pole, intentionally or knowingly fail to take reasonable steps to locate or notify the owner or person in charge of the property of the accident or the defendant's name or address or the registration number of the vehicle the defendant was driving.

The second charge alleged that Johnson did then and there:

> intentionally and knowingly drive a vehicle that became involved in an accident resulting in damage to a vehicle, and the defendant did thereafter, knowing the accident had occurred, intentionally or knowingly fail to give his name or address or registration number of the vehicle the defendant was driving or the name of the defendant's motor vehicle liability insurer to Tommy Ray, who was the driver of or an occupant of or a person attending the vehicle collided with, and the damage to the vehicle collided with resulted in a pecuniary loss of $200 or more.

The jury found Johnson not guilty of failing to perform his statutory duty on striking a structure and failing to perform his statutory duty when being involved in an accident with more than $200.00 in damages to a vehicle. Instead, the jury found him guilty of attempted failure to perform his statutory duty on striking a fixture and attempted failure to perform his statutory duty when being involved in an accident involving more than $200.00 in damages to a vehicle. Both the State and Johnson rested without presenting evidence in the sentencing phase of the

5

trial. The jury assessed Johnson a $200.00 fine in each case. After discharging the jury, the court, in addition to the fines assessed by the jury, imposed restitution in the amount of $200.00 payable to SWEPCO. Johnson filed a motion for a new trial on punishment, requesting that the court remove the restitution to SWEPCO, but the trial court denied the motion.

## II. Legally Sufficient Evidence Supported the Conviction

In his first point of error, Johnson argues that the evidence is legally insufficient to support the jury's verdict because there was no evidence to prove damages of $200.00 or more to the pole.

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Section 550.025(a) requires motorists:

involved in an accident resulting only in damage to a structure . . . or a fixture or landscaping legally on or adjacent to a highway shall:

(1) take reasonable steps to locate and notify the owner or person in charge of the property of the accident and of the operator's name and address and the registration number of the vehicle the operator was driving; and

(2) if requested and available, show the operator's driver's license to the owner or person in charge of the property.

TEX. TRANSP. CODE ANN. § 550.025(a). If the damage to all structures is $200.00 or more, a violation of Section 550.025 is a Class B misdemeanor, but if the damage is less than $200.00, failure to fulfill one's reporting duties is a Class C misdemeanor. TEX. TRANSP. CODE ANN. § 550.025(b). The amount of damages involved forms the basis of punishment assessed. *Elomary v. State*, 796 S.W.2d 191, 192–93 (Tex. Crim. App. 1990); *Jones v. State*, 377 S.W.2d 205, 206 (Tex. Crim. App. 1964); *In re M.C.L.*, 110 S.W.3d 591, 594 (Tex. App.—Austin 2003,

7

no pet.).  Here, Johnson was charged with a Class B misdemeanor violation and was found guilty of attempting to commit that Class B violation.[5]

There is no direct evidence in the record that there were damages of $200.00 or more to the pole.  Even so, there is authority indicating that, under certain circumstances, a jury can use its common knowledge to determine whether the amount of damages meets or exceeds a certain threshold.  In *Nixon v. State*, Nixon crashed his truck into his estranged wife's house and was convicted of criminal mischief causing more than $750.00 in damages.  *Nixon v. State*, 937 S.W.2d 610, 612–13 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (en banc).  The State introduced numerous photographs showing the truck inside the den, large pieces of sheet rock ripped from the walls, damaged furniture and accessories, as well as damage to the kitchen and bathroom.  *Id.* at 612–13.  Several officers testified that the amount of damage caused by the defendant was extensive.  *Id.* at 613.  Even though expert testimony is ordinarily necessary to establish the pecuniary loss to damaged property,[6] the court of appeals concluded that the testimony about the extensive nature of the damage to the house coupled with the photographs provided sufficient evidence from which the jurors could find, based on "common knowledge," that the amount of pecuniary loss was more than $750.00.  *Id.* at 612.

In *Edwards v. State*, Edwards was convicted of Class B criminal mischief after he kicked down Crenshaw's door.  *Edwards v. State*, No. 01-20-00064-CR, 2020 WL 6435769, at *1 (Tex.

---

[5]A person is guilty of criminal attempt if, "with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."  *See* TEX. PENAL CODE ANN. § 15.01.

[6]*Elomary v. State*, 796 S.W.2d 191, 193 (Tex. Crim. App. 1990).

App.—Houston [1st Dist.] Nov. 3, 2020, no pet.) (mem. op., not designated for publication).[7] The evidence regarding the pecuniary loss consisted of testimony that the damage was "significant" and "numerous photographs" showing "the space where the front door used to be with the hinges ripped from the wall, the door frame bent and pulled several inches away from the wall, and the wall inside the apartment cracked along the doorframe." *Id.* at *5. On appeal, Edwards argued that there was legally insufficient evidence that he caused more than $100.00 in damages. The court of appeals, citing *Nixon*, upheld Edwards's conviction finding that the photographs, combined with the testimony, were sufficient evidence for jurors to determine, "based on their common knowledge," that it would cost more than $100.00 to repair the door. *Id.* at *5–6.

The state of the evidence in this case is similar to that of *Nixon* and *Edwards*. Although there was no evidence regarding the cost to repair or replace the pole, photographs of the broken pole were admitted into evidence. Ray also testified that the pole was "completely separated," broken "in half," leaving the "top part . . . just kind of hanging from the wires." As in *Nixon* and *Edwards*, this was sufficient evidence from which a rational jury could employ its common knowledge to reasonably conclude that there was damage of $200.00 or more to the pole. Accordingly, we overrule Johnson's first point of error.

---

[7]Although unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

## III. The Trial Court Erred in Awarding Restitution

In his second point of error, Johnson argues that the trial court erred in ordering restitution because the State failed to show that the damage to the pole was a direct result of the crime for which he was convicted.[8]

"We review challenges to restitution orders under an abuse of discretion standard." *O'Neal v. State*, 426 S.W.3d 242, 246 (Tex. App.—Texarkana 2013, no pet.); *Cartwright v. State*, 605 S.W.2d 287, 288–89 (Tex. Crim. App. [Panel Op.] 1980). A trial court abuses its discretion when it acts without reference to any guiding rules or principles or acts arbitrarily or unreasonably, or when its decision is so clearly wrong that it lies outside the zone of reasonable disagreement. *See Gonzalez v. State*, 117 S.W.3d 831, 839 (Tex. Crim. App. 2003). "An abuse of discretion by the trial court in setting the amount of restitution will implicate due-process considerations." *Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999).

Restitution is a form of punishment, but it is also a crime victim's statutory right. TEX. CODE CRIM. PROC. ANN. art. 42.037 (Supp.). "A broad interpretation of the restitution statutes provides judges with 'greater discretion in effectuating opportunities for rehabilitating criminals, deterring future harms, and efficiently compensating victims.'" *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd) (quoting Neil D. Okazkai, Note & Comment, *People v. Sexton: Insuring an Absurd Result Through Inflexible Interpretation–The Court of Appeal Denies Criminal Restitution To a Victim's Insurance Company*, 31 LOY. L.A. L. REV.

[8]The State contends that Johnson failed to preserve this issue because he failed to raise it at trial. "Challenges to restitution orders must be raised in the trial court to preserve them for appellate review," *Garcia v. State*, No. PD-0025-21, 2022 WL 610983, at *3 (Tex. Crim. App. Mar. 2, 2022), when there is an opportunity to do so, such as when a trial court "order[s] restitution at the sentencing hearing," *id.* at *3. Johnson preserved this issue for our review because he raised it in his motion for a new trial on punishment.

297, 321 (1997)).  That said, the amount of restitution must be just, it must have a factual basis in the record, and it may be ordered only to a victim of an offense for which the defendant is charged.  *Campbell*, 5 S.W.3d at 696–97.  Moreover, as the Texas Court of Criminal Appeals has consistently held, "there must be a causal connection between the criminal offense and the recipient of restitution."  *Hanna v. State*, 426 S.W.3d 87, 93 (Tex. Crim. App. 2014).

Here, Johnson was convicted of attempting to leave the scene of an accident without fulfilling his statutory duties to report it.  *See* TEX. TRANSP. CODE ANN. § 550.025(a).  Thus, the issue is whether that offense caused the property damage to the utility pole.

For the same reasons stated in our opinion in cause number 06-22-00028-CR, we find that the State failed to show in this case that Johnson's offense, attempting to leave the scene of the collision without fulfilling his statutory duties after having been involved in a vehicle collision, caused the damage to the utility pole.  As a result, we sustain Johnson's second point of error, reverse the trial court's order of restitution, and delete the assessment of $200.00 in restitution from the judgment.

## IV.    We May Not Delete the Concurrent Fines from the Judgment

The jury assessed a $200.00 fine for each of Johnson's two convictions.  Accordingly, the judgment in this case assessed a $200.00 fine, as does the judgment for attempted accident involving damage to a vehicle.  The judgments note that the sentences assessed are to be served concurrently, but the trial court did not specifically order the fines in each case to run concurrently.  In his final point of error, Johnson argues that this Court should delete one of the two $200.00 fines because the fines are be served concurrently.

11

The Texas Penal Code requires sentences for offenses arising out of the same criminal episode that are prosecuted in a single criminal action to be served concurrently. TEX. PENAL CODE. ANN. § 3.03(a) (Supp.). The concurrent sentence provision in Section 3.03 applies to the entire sentence, including fines. *See State v. Crook*, 248 S.W.3d 172, 177 (Tex. Crim. App. 2008). Where multiple fines are assessed in a same-criminal-episode prosecution and they are ordered to be discharged concurrently, they discharge in the same manner as concurrent terms of confinement—the defendant pays the greatest amount of the fine but receives credit for satisfying all of the multiple concurrent fines. *See id.* However, each judgment must include the fine actually imposed, and the courts of appeals may not delete a lawfully assessed concurrent fine from a trial court's judgment in order to protect against possible improper stacking of fines.[9] *Ansastassov v. State*, No. PD-0848-20, 2022 WL 5054846, at *3 (Tex. Crim. App. Oct. 5, 2022) (abrogating cases deleting concurrent fines). Therefore, we overrule Johnson's third point of error.

---

[9]"If defendants are being improperly subjected to consecutive fines in conflict with the trial court's judgments in a given case, the proper course is to pursue relief through a writ of habeas corpus." *Anastassov v. State*, 2022 WL 5054846, at *6.

12

**V.      Conclusion**

We modify the judgment by deleting the award of $200.00 in restitution.  As modified, we affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:        November 9, 2022
Date Decided:          December 22, 2022

Publish