

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-24-00217-CR

---

HOUSTON SAMUEL HAMMONS, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-24-46712

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Fannin County jury convicted Houston Samuel Hammons of criminal mischief causing pecuniary loss of $2,500.00 or more but less than $30,000.00, a state jail felony. *See* TEX. PENAL CODE ANN. § 28.03(b)(4) (Supp.). For this offense, the jury assessed a punishment of two years' imprisonment, and the trial court ordered Hammons to pay $4,044.00 in restitution to his victims. In his sole issue on appeal, Hammons argues that the evidence is legally insufficient to support the element of pecuniary loss.[1] Because we find that legally sufficient evidence supported the amount of pecuniary loss, we affirm the trial court's judgment.

## I.  Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)

---

[1]In our cause number 06-24-00216-CR, Hammons appeals his conviction for family violence assault by occlusion.

2

(citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Here, the State alleged that Hammons, "pursuant to one scheme or continuing course of conduct," intentionally or knowingly damaged or destroyed "the door of a Trenton [Police Department (TPD)] squad car and a car window, by hitting[,] striking, elbowing, and/or kicking it, without the effective consent of Trenton Police or Kayla McBride, the owner[s] of the property, and thereby caused . . . the aggregate amount of pecuniary loss" "of $2,500[.00] or more but less than $30,000[.00] to the owner[s]."

## II. The Evidence at Trial

At trial, McBride testified that she was at a gas station when Hammons hit her passenger side window with "the side of his arm or his elbow," shattering it. The State introduced photos of the broken car window for the jury to see. A gas station employee called the TPD.

Officer Ken Franklin, with the TPD, arrived at the scene, arrested Hammons, and placed him in his Chevrolet Tahoe patrol unit. Franklin testified that, as he was transporting Hammons, Hammons began "kicking [the] car door with his feet." Hammons's conduct was captured by the

3

backseat camera in Franklin's patrol unit, and the State played the footage for the jury. After Hammons also kicked the patrol unit's window, Franklin stopped the patrol unit to try to calm Hammons down. Franklin photographed the "damage to [the] rear passenger door" of his patrol unit showing that Hammons "bent the frame approximately one inch out." As a result, the door could not be properly shut because a gap existed. Franklin testified that he had inspected the patrol unit at the beginning of his shift and noted no damage on the vehicle.

McBride testified that her car window was replaced by Unique Crystal Auto Glass and that the repair cost $175.00. The State introduced the receipt from the repair shop, which showed that the repair cost of $175.00 was actually paid.

Franklin testified that he took his patrol unit to a body shop called Collision 1st a few days after the incident and asked them for an estimate for the repairs. The estimate from Collison 1st, which contained an itemized list of parts requiring repair, and cost to repair each item, totaled $3,869.92. In support of the estimate, the State presented Gregory Taft, an employee of Collision 1st, as an expert witness.[2] Taft testified that he had provided Franklin with the estimate for the cost of repairing the damage caused to the Tahoe. Taft said that he had been working at Collision 1st for ten years and, for the past four years, had been "estimating and managing." Taft, who described each damaged part of the patrol unit in detail, testified that the $3,869.92 estimate was for "everything that would [be] require[d] to get that door back to the original condition" "prior to being bent" and was a "common" cost "for that kind of vehicle and that kind of repair."

---

[2]Hammons does not challenge Taft's qualifications on appeal.

**III.   Legally Sufficient Evidence Supported the Amount of Pecuniary Loss**

A person commits criminal mischief if he, "without the effective consent of the owner[s] . . . intentionally or knowingly damages or destroys the tangible property of the owner[s]." TEX. PENAL CODE ANN. § 28.03 (Supp.). On appeal, Hammons does not argue that the State failed to prove that he intentionally or knowingly damaged McBride's and TPD's property without their consent. Instead, he only argues that the evidence is insufficient to support the amount of pecuniary loss.

Because the pecuniary loss resulting from the criminal mischief determines the grade of the offense, the value of pecuniary loss is a critical element of the offense. *See* TEX. PENAL CODE ANN. § 28.03(b); *Campbell v. State*, 426 S.W.3d 780, 784 (Tex. Crim. App. 2014); *Elomary v. State*, 796 S.W.2d 191, 192–93 (Tex. Crim. App. 1990). Since the record here establishes that the vehicles were damaged, not destroyed, the pecuniary loss is determined by the "cost of repairing or restoring the damaged property within a reasonable time." *See* TEX. PENAL CODE ANN. § 28.06(b).

While "an unsupported lay opinion as to *damage*, without more, will be insufficient to prove *cost of repair*," expert testimony is not required to prove the cost of repair. *Holz v. State*, 320 S.W.3d 344, 350, 352 (Tex. Crim. App. 2010). Here, the record reflects that the cost of repair to McBride's vehicle was proved by a receipt from Unique Crystal Auto Glass showing the amount actually paid to repair the window. As the owner of the vehicle, McBride's testimony as to how much she paid to repair the window is legally sufficient to establish the cost of repair. *See Campbell*, 426 S.W.3d at 783, 785; *see also Petersen v. State*, No. 06-21-00080-

CR, 2022 WL 1160094, at \*6 (Tex. App.—Texarkana Apr. 14, 2022, no pet.) (mem. op., not designated for publication).

As for the cost of repair for the patrol unit, Franklin testified that there was no damage to the vehicle before his shift. The jury viewed footage showing that Hammons had caused damage to the patrol unit and reviewed several photos of the damage. The record reflects that the estimate from Collision 1st was supported by an expert witness, Taft, who testified about the items requiring repair. Taft indicated that the cost of the repair was common and required to restore the vehicle. Such "expert testimony concerning an estimate is enough to establish the fair market value of the repair cost to satisfy section 28.06(b)." *English v. State*, 171 S.W.3d 625, 629 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Elomary*, 796 S.W.2d at 194).

Even so, Hammons argues that there is no evidence that "the amount estimated for repairs was reasonable." Yet, when there is evidence of cost of repair, "proof as to the 'reasonableness' of the amount of repairs is not required." *Kinkade v. State*, 787 S.W.2d 507, 509 (Tex. App.—Houston [1st Dist.] 1990, no pet.); *see Glasschroeder v. State*, No. 02-12-00161-CR, 2013 WL 1830751, at \*4 (Tex. App.—Fort Worth May 2, 2013, pet. ref'd) (mem. op., not designated for publication). Hammons also argues that there is no evidence that the estimate was paid, but evidence of payment is not required to prove the cost of repair. *See Elomary*, 796 S.W.2d at 192, 194; *Barnes v. State*, 248 S.W.3d 217, 220 (Tex. App.—Houston [1st Dist.] 2007, pet. struck); *Espinoza v. State*, 955 S.W.2d 108, 112 (Tex. App.—Waco 1997, pet. ref'd) ("Under 28.06 there is no requirement that repairs to the damaged property actually be made . . . .").

In sum, we find that this was not a case involving "'off the wall,' opinion testimony, or a mere estimate of cost of repair, '*without further evidence*.'" *Holz*, 320 S.W.3d at 350 n.29 (quoting *Barnes*, 248 S.W.3d at 220). Rather, this was a case where the State connected the estimate of damages with the cost of repair. As a result, when viewing the totality of the evidence in a light most favorable to the verdict, we find that any rational trier of fact could have found that the amount of pecuniary loss was $2,500.00 or more. Consequently, we overrule Hammons's sole point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted: July 7, 2025
Date Decided: July17, 2025

Do Not Publish